**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 06105**
carlpost@lawofficeofdanielsnyder.com
**John David Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
   Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **BRENDA TYLE,**<br><br>    Plaintiff,<br><br>  v.<br><br>**MARION COUNTY,**<br><br>    Defendant. | Case No. 6:23-cv-158<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>UNLAWFUL EMPLOYMENT ACTIONS FMLA; ADA & Supplemental State Law Claims |

## PRELIMINARY STATEMENT

1.   This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, attorneys' fees, costs, and interest.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

2.      In this action, Plaintiff Brenda Tyle brings claims against Defendant Marion County, Oregon for violations of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.; as well as supplementary state claims ORS 659A.112, ORS 659A.150, et seq. (OFLA), and ORS 659A.040. As alleged herein, said Defendant discriminated and retaliated against Plaintiff because of her disability, age, and for taking protected medical leave. Further, said Defendant failed to engage in the interactive process or provide reasonable accommodations. Said Defendant also interfered with Plaintiff's use of medical leave. Plaintiff seeks equitable relief as well as economic and non-economic damages, attorneys' fees, and costs.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this lawsuit under both 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

4.      Venue is proper in the Eugene Division of the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in that Judicial District. A substantial part of the events giving rise to the claims occurred in Marion County which is in the Eugene Division.

5.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

6.      To the extent applicable to any claims alleged herein, Plaintiff complied with the Oregon Tort Claims Act on or about June 20, 2022, by sending Notice of Tort Claim against Defendant. Defendant's Risk Manager acknowledged receipt of Plaintiff's Notice of Tort Claim.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

7.    All preconditions to jurisdiction pursuant to 42 U.S.C. §2000e-5 have been satisfied.

a.    On or about July 14, 2022, Plaintiff filed a complaint of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD), Case no. DPEMDP220714-41028, for violation of Oregon employment discrimination law including disability discrimination in employment and retaliation, medical leave interference (OFLA), whistleblowing, and other Oregon Unlawful Employment Practices. BOLI CRD acknowledged the complaint on August 8, 2022.

b.    On or about August 8, 2022, BOLI CRD co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge no. 38D-2022-00671.

c.    On November 2, 2022, BOLI CRD issued a right-to-sue letter for case no. DPEMDP220714-41028.

d.    On December 12, 2022, the EEOC issued a dismissal and right to sue notice for charge no. 38D-2022-00671.

### PARTIES

8.    Plaintiff Brenda Tyle ("Plaintiff") is a citizen of the United States of America. At all times relevant, Plaintiff was an employee of Marion County, Oregon.

9.    Defendant Marion County (hereafter "the County") is a political subdivision of the State of Oregon.

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

## GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff has a disability Plaintiff disclosed her disability to the County on multiple occasions. Plaintiff was stigmatized for her disability by the County, and the County changed the terms and conditions of her employment.

11.     In or about July 2000, Plaintiff began suffering from a disability after she had a grand mal seizure. During the seizure, Plaintiff sustained organic brain damage or injury to both temporal lobes of her brain which resulted in memory loss and the development of an organic personality syndrome characterized by increased emotional lability, irritability, sensitivity to certain noises in the workplace, and a tendency to compulsiveness in the workplace.

12.     In 2012, Plaintiff was diagnosed with temporal lobe epilepsy. Plaintiff was and is prescribed medication for her epilepsy. Said medication does not eliminate her epilepsy and has unwanted side effects.

13.     On or about November 12, 2019, Plaintiff applied for a Legal Secretary 2 position with Defendant Marion County in its District Attorney Support Enforcement Division. On Plaintiff's job application, Plaintiff disclosed her disability to Defendant. During the hiring process, Plaintiff disclosed to Defendant County during interviews her disability, memory loss, sound sensitivity, compulsiveness, and the effects of her medications.

14.     Defendant hired Plaintiff. On January 13, 2020, Plaintiff began working for Defendant in the Marion County District Attorney, Support Enforcement Division. Plaintiff's Supervisor was Tia Bufton, Legal Support Supervisor. Plaintiff disclosed her disability to Ms. Bufton, noise sensitivity, memory loss, problems with instant recall, and she requested the accommodation of receiving the accommodation of receiving more or additional training to learn the job.

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

15.    In July 2020, Plaintiff passed Marion County's six months of trial service. Plaintiff received a positive evaluation and a merit increase from Bufton.

16.    Plaintiff asked Bufton multiple times for training on ORIGIN, the child support tracking system used by Marion County. Bufton said that the training was no longer offered. Plaintiff did not receive her first formal training on ORIGIN until March 2021. Plaintiff learned that the DOJ training team still provided ORIGIN training, her supervisor just had to request the training. When Plaintiff provided that information to Bufton, a training was scheduled. After the training, Bufton told Plaintiff that Plaintiff asked too many questions and that distracted others.

17.    Plaintiff made a whistleblowing complaint regarding violation of law by Tia Bufton. Plaintiff reported an assault and battery by Tia Bufton. Bufton had grabbed Plaintiff's left arm and pulled Plaintiff back into the office in front of a client. Dawn Thompson, Administrative Services Manager, talked to Plaintiff about a report that Plaintiff made regarding Bufton's unwanted physical contact with Plaintiff.

18.    After Plaintiff reported the assault and battery, Bufton retaliated against Plaintiff, including accusing Plaintiff of talking too loudly. Bufton told Plaintiff, "I am documenting every time we talk, and next time will be disciplinary."

19.    In February 2021, Plaintiff asked Bufton for additional training as an accommodation for her disability. Bufton refused to provide training.

20.    Plaintiff requested to use a check daily file as an accommodation for her disability. In March 2021, Ms. Bufton told Plaintiff to get rid of a "check daily file" that Plaintiff was keeping as a memory tool for her disability.

21.    On March 19, 2021, at 1:30 p.m., Plaintiff was required to attend a meeting with Tia Bufton and Dawn Thompson. Plaintiff received an email from Dawn Thompson with the

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

Subject: Follow Up – Resources. Ms. Thompson provided EAP information and attached the ADA paperwork for accommodations. Ms. Thompson stated, "This does not have a negative stigma – this is to assist you and the County in understanding your potential needs." Plaintiff was encouraged to reach out to Human Resources with concerns regarding my working conditions and personnel matters.

22.    On April 13, 2021, Plaintiff again requested training needed for her disability as an accommodation.

23.    On May 14, 2021, Bufton announced that effective immediately, Plaintiff was to only communicate with Deputy District Attorney Concetta Schwesinger, Trial Team Supervisor, by exchanging Post-it notes. Plaintiff asked, "This is because I have a disability and they don't like my communication style, isn't it?" Plaintiff told Bufton that her disability impacts verbal conversations with people.

24.    On May 18, 2021, Plaintiff reported to Bufton that she was being bullied by Schwesinger.

25.    On May 26, 2021, Plaintiff was called into an 8:30 a.m. meeting with Dawn Thompson and Bufton. They talked to Plaintiff about her communication style. Plaintiff explained that any perceived communication issues are due to her disability. Thompson responded, "Quit using your disability as a crutch." During this meeting, Plaintiff made whistleblowing reports to Thompson: Plaintiff told Thompson that Bufton had used LEDS to look up a client who came into the office to find out if they had a criminal history, an illegal and inappropriate use of the LEDS system; Plaintiff again reported that Bufton had also grabbed Plaintiff's arm and pulled her away from reception; Plaintiff told Thompson that Bufton had refused to provide a parent with the child support balance when requested; and Plaintiff told

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

Thompson that Bufton had asked Plaintiff to notarize a personal document but refused to sign the

notary journal. To date, Marion County has returned Plaintiff's notary stamp, but refuses to

return Plaintiff's notary journal.

26.     On June 3, 2021, Bufton directed Plaintiff not to talk to anyone in the front of the

office. Bufton directed Plaintiff to only instant message her co-workers and then go to the back

of the office if she needed to speak with them. Bufton further instructed Plaintiff that she was not

allowed to have any closed-door conversations with Bufton unless there was a witness present.

No one else was required to do this.

27.     On June 11, 2021, Plaintiff's medical provider at the OHSU Department of

Neurology wrote a letter about her medical condition which was provided to Defendant County.

The letter states in part "she sustained an injury to both temporal lobes that resulted in residual

memory impairment and the development of an organic personality syndrome characterized by

increased emotional lability, irritability, sensitivity to certain noises in the workplace, a tendency

to compulsiveness in the workplace. . . . Her uncontrolled seizures for this long may have caused

some additional brain injury, worsening her memory dysfunction and the above described

behavioral changes. . . . her anti-epileptic drug therapy may also contribute to her problems with

irritability and emotional lability. . . . Her medical issues can at times prevent her from

performing the duties of her job without appropriate accommodation. These organically based

behavioral changes have led to problems in her work environment, for which she requests ADA

accommodation. Some of the requested accommodations include a handheld voice recorder to

help her remember talking points during meetings, additional time to write down

questions/thoughts to prevent interruptions (by her) during team meetings and a private, quiet

location to carry out her work such as an office with a door that closes. I will be happy to fill out

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

further ADA paperwork to support these requests."

28.    On June 24, 2021, Plaintiff submitted an ADA Accommodation Request Form for her medical conditions including epilepsy and misophonia. Plaintiff requested the following accommodations: a voice recorder in an effort to mitigate the claim that she was disrupting others during meetings and trainings and help her recall information shared; more time to take notes; training; and additional training if needed.

29.    Plaintiff applied for medical leave. On or about June 30, 2021, more than a year after becoming employed by Defendant, Plaintiff submitted a request for FMLA and received an FMLA approval letter.

30.    On July 1, 2021, Plaintiff met with Leslie Martin, Human Resources Leave Administrator. On July 2, 2021, Plaintiff sent an email to Martin notifying her of an error in the FMLA approval letter.

31.    On July 6, 2021, Plaintiff provided a letter to Martin from her medical provider at OHSU, recommending the following accommodations: a handheld voice recorder to help her remember details, particularly during staff meetings; additional time to write down questions/thoughts to prevent interruptions during team meetings; a quiet location to carry out her work, such as an office with a door that closes; approval to stay late at work to complete documentation from work done during the day while details were still fresh in her mind; and to the extent Plaintiff's behavioral changes and memory dysfunction had led to problems in her work environment, her provider was requesting accommodations for her under the Americans with Disabilities Act.

32.    On July 8, 2021, Plaintiff met with Martin and Senior Human Resources Business Partner, Maria Nacario, regarding Plaintiff's requested accommodations. Defendant Plaintiff's

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

requests for accommodation. Instead, Defendant offered the following accommodations: Tia Bufton would make meeting minutes more substantial and detailed; Plaintiff was not to answer the telephone at 4:30 p.m. each day; and Tia Bufton would reschedule prior meetings and work out a plan for any further training. Marion County denied Plaintiff access to or use of a voice recorder to document meetings and details as an accommodation. No reason for the denial was given. Bufton did not provide clear meeting minutes and they were not distributed timely.

33.    On July 15, 2021, Bufton insisted that Plaintiff attend the one-on-one in the café on the first floor with Schwesinger, even though this was a noisy environment which was distracting to Plaintiff. Schwesinger did not attend other co-workers' one-on-one meetings, only Plaintiff's.

34.    On July 16, 2021, Plaintiff was out all day on medical leave because she was experiencing auras associated with my epileptic seizures. A scheduled training session with Bufton was cancelled.

35.    On July 19, 2021, Plaintiff sent an email to Martin, again requesting a handheld voice recorder as recommended by her OHSU neurologist. Martin responded: "At this time, Marion County will not be providing you with a recording device. As outlined in the ADA Accommodation Approval letter, we have provided you with an alternative reasonable accommodation to assist you with recall of staff meeting minutes. More detailed minutes will be taken, and your supervisor will e-mail you the minutes as soon as possible." The voice recorder was not just for staff meetings. It was also for trainings and any discussions between Plaintiff and management that included feedback or changing Plaintiff's job duties. Plaintiff never received more detailed meeting minutes, and they were never timely. Sometimes Plaintiff received the minutes days or weeks late, and sometimes not at all.

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

36.     On multiple occasions, Plaintiff followed up with Marion County on her previously requested accommodation of being permitted to work in a quiet area, such as in an office with a door that closes. On October 22, 2021, Martin told Plaintiff that Plaintiff needed to submit a written request to be moved to another work area. Plaintiff then submitted a formal written request to be moved. Bufton then placed restrictions on when and for how long Plaintiff could have her office door closed, thereby exposing Plaintiff to more noise. Plaintiff spoke with Martin about Bufton's open door requirement. Martin told Plaintiff that Plaintiff needed to provide a renewed ADA request to be moved. Bufton refused to honor the ADA accommodation regarding closing the door. Bufton put her own stipulations on them even after Plaintiff reported to Martin. Human Resources allowed Bufton to continue denying accommodation. Plaintiff also provided multiple suggestions where Plaintiff could be relocated in the office to accommodate her. All of Plaintiff's suggestions were denied.

37.     On July 21, 2021, Plaintiff met with Bufton for an annual performance evaluation in the main District Attorney's office, Schwesinger was present. Bufton and Schwesinger retaliated against Plaintiff and rated her performance as unacceptable in every category except Customer Service.

38.     On July 22, 2021, Union President Trish Straw visited Plaintiff's office to see her work environment because of the difficulties Plaintiff was having with management not providing reasonable accommodations.

39.     On July 23, 2021, Plaintiff left work and took one-and-a-half hours of medical leave because she was having epilepsy auras related to the stress of the hostile workplace. Plaintiff sent an email to Bufton, Thompson, and Schwesinger to let them know she was leaving at 3:30 p.m. because she was experiencing auras from her seizure condition.

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

40.     On July 24, 2021, Plaintiff filled out an online administrative complaint questionnaire with the Oregon Bureau of Labor and Industries Civil Right Division (BOLI-CRD) against the County for disability discrimination and harassment.

41.     On July 26, 2021, Defendant required Plaintiff to submit a "fact-finding" interview. Defendant led Plaintiff to believe that Plaintiff was being provided further opportunity to meet with Human Resources to share how she was being treated by her peers and management, but Plaintiff instead Plaintiff met with Schwesinger and Defendant County's risk management attorney.

42.     On July 28, 2021, at 2:07 p.m., Bufton cancelled a scheduled case coding training for Plaintiff.

43.     From August 5 through August 23, 2021, Plaintiff was off work on medical leave with COVID-19. On August 11, 2021, Plaintiff received approval from Defendant for FMLA for her serious health condition for the time she missed work due to COVID-19.

44.     On August 25, 2021, after Plaintiff returned to work from medical leave, Ms. Bufton told Plaintiff "it was the best two and a half weeks in the office while you were out."

45.     On August 25, 2021, Bufton told Plaintiff that it was Plaintiff's responsibility to create her own desk reference manual for internal processes. Plaintiff told Bufton that Plaintiff still had not been trained on much of her position and needed more training. Plaintiff was expected to create a desk reference manual for the Legal Secretary 2 position without being trained. Schwesinger asked Plaintiff weekly how much Plaintiff had completed on the manual and gave Plaintiff a deadline. Plaintiff told Schwesinger multiple times that Plaintiff could not write the manual without being trained in the position.

46.     On August 30, 2021, Plaintiff submitted a rebuttal to the July 21, 2021, negative

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

performance evaluation.

47.     On August 31, 2021, Plaintiff's Primary Care Physician authorized Plaintiff to take medical leave from September 1, 2021, through October 13, 2021. On August 31, 2021, Plaintiff met with Thompson, and provided Thompson with the note from Plaintiff's doctor authorizing six weeks of medical leave. Plaintiff explained that the ongoing stress from the hostile work environment was causing Plaintiff to suffer seizures and making it difficult to stay focused. Thompson told Plaintiff: "Your job is not at risk. You do a great job. If you were doing anything that was concerning I would've already called you in and talked to you and believe me, you don't want me calling you in like that."

48.     On October 12, 2021, Plaintiff's healthcare provider wrote in a report, "Brenda's disability requires accommodations afforded to her by the Americans with Disabilities Act, recommending the following accommodations – A handheld voice recorder for instant recall, to improve memory retention, one on one training in order to develop clear expectations of her responsibilities. To improve distractibility, a work location with limited distractions."

49.     On October 14, 2021, Plaintiff returned to work again from medical leave. Plaintiff sent an email to Leslie Martin, Human Resource Leave Administrator, requesting to engage in the interactive process for ADA accommodations. On October 14, 2021, Plaintiff met with Dawn Thompson and Tia Bufton and gave them copies of letters from her medical providers from OHSU Adult Epilepsy Program and a letter from a Board Certified Clinical Neuropsychologist. The neuropsychologist wrote "The patient's performance on testing suggests Brenda [Tyle] has many cognitive strengths; however, she also has some weaknesses related to her medical condition that may make some aspects of her job more difficult (*e.g.,* initial encoding of new information, particularly in more distracting environments). Given her other

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

strengths, with the appropriate compensatory strategies, it is anticipated that she can be successful." The provider wrote the following recommendations "In an environment where [Ms. Tyle] is given a lot of information (*e.g.*, meetings, appointments, trainings), [she] would benefit from being given access to information in an alternative way that is available immediately following presentation. Individuals with such difficulties benefit from recording information, which can then be available for review immediately. This can help make sure information was heard correctly, as well as provide an additional opportunity for encoding, helping with later recall. Given the difficulty with maintaining attention, it is recommended [Ms. Tyle] be in a location with limited distractions (*e.g.*, in an office with a door that can be shut, or at a space in the office with limited sounds/other individuals)."

50.    On October 15, 2021, Plaintiff sent another email to Leslie Martin, Human Resources Leaver Administrator, regarding the interactive ADA process and informed Martin that Plaintiff was being trained incorrectly.

51.    On October 22, 2021, Plaintiff had a meeting with Martin and Sierra Harris, Senior Human Resource Business Partner. Martin told Plaintiff that she would be meeting with "legal" and management next week to discuss Plaintiff's ADA request for accommodations to use of a voice recorder. They also discussed Plaintiff's ADA request to be moved to the back of the office where it was less distracting. Martin told Plaintiff that her requested accommodations were still under review. Plaintiff submitted another ADA accommodation request to be moved to a less distracting work environment. Plaintiff talked to Martin and Harris about filing a claim under the ADA.

52.    On October 22, 2021, after meeting with Martin, Plaintiff received an email from Bufton. Bufton wrote that Plaintiff could not have a telephone stand in the office because it was

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

visible. Plaintiff then moved the telephone stand completely out of sight and asked Bufton to see if that was okay. Bufton said "No" and directed Plaintiff not to use the telephone stand. Plaintiff reported to Harris that Plaintiff was being harassed by Bufton on the basis of disability. Harris scheduled a meeting with Plaintiff and Senior Human Resource Business Partner, Maria Nacario.

53.    On October 22, 2021, Plaintiff let Bufton know that as an ADA accommodation, she was going to close her office door to work. Bufton said, "The door needs to be open." Plaintiff went to Human Resources and told Harris that Bufton was denying approved ADA accommodations.

54.    On October 28, 2021, Plaintiff had a meeting with Ms. Bufton. Plaintiff explained how distracting it was for her to sit directly behind reception and how her disabilities made it difficult for Plaintiff to learn and focus. Ms. Bufton promised to follow up with Janet Henry regarding training materials for the list of tasks that Plaintiff still needed training on. The training materials were never provided to the Plaintiff.

55.    On October 29, 2021, Plaintiff sent an email to Bufton and copied Thompson, Nacario, Harris, Trish Straw, and Sam Davila explaining how the treatment she was receiving was making her feel harassed.

56.    On November 2, 2021, Plaintiff attended a meeting with Bufton, Martin, Harris, and Nacario. During the meeting, Plaintiff explained that closing her door for fifteen minutes at the beginning of each hour was not working, that using noise-cancelling headphones caused a rash and interfered with her ability to hear the telephone ringing when she was doing backup to reception. Harris told Plaintiff that she was unable to relocate Plaintiff to another workspace in the office. Plaintiff suggested several alternative workspaces to relocate her to, all of which were rejected without explanation. Others in the office were expected to assist with answering the

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

phones and assist with customers. They would keep their doors closed all day and not be talked

to about it. Plaintiff was frequently talked to about either speaking too loudly on the telephone or

spending too long explaining a case to the client.

57.    On November 4, 2021, Plaintiff sent an email to Bufton and copied Schwesinger

regarding hostile treatment at work and finding a resolution to the intolerable workplace

conditions.

58.    On November 5, 2021, Martin sent an email to Plaintiff with the Subject: PHIMC

– BT Interactive Process Update. Martin wrote that while they continued researching the matter,

Plaintiff could continue closing her office door for up to an hour as a temporary accommodation

to reduce noise and distractions as long as Plaintiff first checked-in with her supervisor.

59.    On November 5, 2021, Plaintiff sent an email to Nacario, requesting that she

schedule a meeting with Monica Gates and Plaintiff to discuss concerns about the hostile work

environment in their department. On November 5, 2021, Plaintiff met with Nacario and talked to

her about the ongoing hostility and harassment in the department. Plaintiff told Nacario that she

had spoken with BOLI-CRD about filing an administrative complaint.

60.    On November 9, 2021, Plaintiff met with Martin and Nacario for an update about

her request for ADA accommodations. Harris, and Senior Assistant Marion County Counsel,

Brian Kersan, were also at the meeting. Plaintiff was told that Marion County had opened an

internal "602" investigation regarding Plaintiff's report of hostile workplace, discrimination, and

harassment and that a third party would conduct the investigation and interview people. Martin

and Nacario told Plaintiff that her workstation would be moved into a cubicle with a door on it

for thirty days to determine whether the new office arrangement was helpful.

61.    Plaintiff was then required to participate in weekly "touch base" meetings with

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

Schwesinger present at every meeting. At almost every meeting, Plaintiff discussed her disability.

62.    On November 17, 2021, Plaintiff was allowed to do some training with Investigator Vadim Balabanov. Balabanov told Plaintiff that he was confused because he did not yet know how Marion County did things. Plaintiff asked Schwesinger if Monica Gates, Support Enforcement Agent 1, could train Plaintiff, since Gates had been in the position for more than ten years. Schwesinger responded "No. Vadim Balabanov is going to train you because I said so." Schwesinger then set an egg timer on the desk. When Plaintiff asked her why she set the egg timer, Schwesinger said "that is all the training you are allowed to receive. . . I have finally had it with you! I have heard you say you haven't been trained enough. You will get training, but the training will not exceed thirty minutes."

63.    On November 29, 2021, Schwesinger again told Plaintiff that Plaintiff needed to keep any training sessions she received to not exceed thirty minutes. Plaintiff explained that thirty minutes at a time was not long enough time to learn an aspect of the job because of her disability and related memory loss issues. Plaintiff was only provided thirty minutes per week for training, and was not allowed to ask any questions the rest of the week. Plaintiff had to write down questions and hold them until the following week's thirty minute training. Plaintiff told Schwesinger that Plaintiff felt as though she was being set up to fail. Schwesinger threatened Plaintiff, saying that if she heard Plaintiff say that she had not been trained, she would place Plaintiff on progressive discipline. Plaintiff replied that she was constantly being monitored and that she could not perform her work effectively when training was limited, accommodations were being denied, and no one in the office would communicate with her. Attorneys and peers in the office told Plaintiff that Bufton and Schwesinger had called them in and told them that they were not to discuss cases or processes with Plaintiff. Everyone else in the office continued to

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

discuss cases and processes amongst each other. Plaintiff told Schwesinger that Plaintiff was

expecting a call from BOLI-CRD about the civil rights claim she filed. The reference to Plaintiff

filing a civil rights claim with BOLI angered Schwesinger.

64.    On December 2, 2021, Schwesinger told Plaintiff "me supervising you makes me

feel like a Queen."

65.    On December 6, 2021, Plaintiff had a meeting with Schwesinger and Nacario.

Plaintiff requested more consistent training that would actually benefit Plaintiff. Plaintiff

explained that she needed to be allowed to ask questions because this was the way she learned.

On December 6, 2021, Schwesinger told Plaintiff to stop taking notes after Plaintiff talked to

people. Plaintiff told Schwesinger that Plaintiff used notebooks as a tool to assist with short-term

memory issues.

66.    Plaintiff had a December 13, 2021, meeting with Schwesinger and Nacario.

Plaintiff asked about receiving further training, Schwesinger said firmly and a loud, angry voice,

"Do not bring these issues up with management again."

67.    From December 30, 2021, through January 4, 2022, Plaintiff was feeling dizzy,

had auras and seizures. Plaintiff used FMLA leave to try to get control of her ongoing seizures.

On January 4, 2022, Plaintiff was still suffering from auras and dizziness, was late to work, and

asked to use FMLA time to cover the tardiness.

68.    On January 13, 2022, at 4:15 p.m., Plaintiff met with Nacario, who said the third-

party investigation regarding Plaintiff's reports of discrimination and retaliation had been

completed and the matter was "resolved . . I'm not at liberty to discuss that with you." During

this meeting, Plaintiff requested a copy of the third-party investigation report. Defendant refused

to provide the report to Plaintiff, or give Plaintiff any other information except say that the issue

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

had been resolved. Defendant also conducted selective interviews, as they did not interview witnesses Plaintiff asked to be interviewed.

69.    From January 17, 2022, through January 24, 2022, Plaintiff was off work on medical leave again after being diagnosed with COVID-19 for the second time.

70.    On February 13, 2022, Plaintiff  administrative complaint with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD) for discrimination and harassment on the basis of disability, OFLA, OSTL, and whistleblowing.

71.    On March 23, 2022, Plaintiff met with Schwesinger and Nacario. These meetings were typically held in the Risk Management conference room on the fourth floor of administration within the Human Resources offices. Plaintiff was forced to have weekly meetings with Schwesinger and Nacario. Nacario told Plaintiff that the meetings were not disciplinary, but the meetings resulted in disciplinary action. When Plaintiff questioned why she participated in these weekly meetings, she was told that is how Schwesinger monitored her staff. Plaintiff said that she was not being accommodated and the meetings seemed more like an opportunity for Schwesinger to continue harassing Plaintiff.

72.    On March 28, 2022, Plaintiff sent an email to Schwesinger and requested to flex her time because she was late due to epileptic auras. Schwesinger denied the request for flex time. Schwesinger told Plaintiff that she could only flex time for medical appointments. Plaintiff then used intermittent FMLA leave time to cover the time she was unable to work due to the spike in her epileptic symptoms.

73.    Bufton told Plaintiff that Plaintiff was only allowed to communicate with Schwesinger by writing on a sticky note. Bufton allowed Plaintiff to communicate with Rob Johnston if she sent him an instant message first requesting permission to ask a question

PAGE 18 – COMPLAINT AND DEMAND FOR JURY TRIAL

regarding one of his cases. This was not office protocol, and no other staff was required to communicate with the attorneys this way.

74.     On April 1, 2022, Plaintiff had a meeting with Schwesinger, Nacario, and Human Resource Manager, Lori O'Hara. During the meeting, Plaintiff was handed a letter of reprimand. Plaintiff said that her requested ADA accommodations were not being honored. The management stepped out of the room and had a private caucus. The management then returned and handed Plaintiff a second letter placing her on paid administrative leave effective immediately.

75.     On April 5, 2022, Plaintiff received a telephone call from Nacario telling Plaintiff to come to the office for a meeting. Nacario then said that management was going to give Plaintiff a letter notifying Plaintiff that Plaintiff would have a due process meeting on Friday April 8, 2002, at 12:00 p.m.

76.     On April 8, 2022, at 12:00 p.m., Plaintiff attended a meeting with Thompson, Nacario, O'Hara, and District Attorney, Paige Clarkson. Union Steward, Sam Davila, was present via telephone. Plaintiff read a prepared statement rebutting the allegations of misconduct.

77.     On April 11, 2022, Plaintiff sent Nacario an email attaching a copy of the statement she read at the April 8, 2022, due process meeting.

78.     On April 12, 2022, Plaintiff received a telephone call from Nacario telling her that she needed to report for a disciplinary meeting. Plaintiff was presented with a letter of termination of employment effective April 12, 2022.

## FIRST CLAIM FOR RELIEF

### (Title I of the ADA, Count I – Discrimination)

79.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

80.     At all times material, the County was an employer for the purpose of, and subject to, the ADA.

81.     Plaintiff has an impairment, which substantially limits one or more major life activities, has a history or record of such impairment, or was regarded by the County as having such impairment.

82.     After Plaintiff disclosed her disability to the County, it began to discriminate against her as alleged above. Said discrimination was based on the County's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

83.     The County failed to engage in the interactive process with Plaintiff.

84.     Plaintiff requested reasonable accommodations from the County.

85.     At all relevant times, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

86.     The County discharged Plaintiff.

87.     The County conduct violated 42 U.S.C. § 12112.

88.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**(Title I of the ADA, Count II – Retaliation)**

89.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

90.     The County retaliated against Plaintiff for pursuing her rights in accordance with the ADA. Such actions by the County are in violation of the ADA.

91.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## SECOND CLAIM FOR RELIEF

### (Oregon Disability Discrimination - ORS 659A.103 et seq.)

92.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

93.    Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

94.    The County is an 'employer' as defined at ORS 659A.106.

95.    After Plaintiff disclosed her disability to the County, it began to discriminate against her as alleged above. Said discrimination was based on its failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

96.    The County failed to engage in the interactive process with Plaintiff.

97.    Plaintiff could perform the essential functions of her job with the County with or without the reasonable accommodations of allowing her to continue to work.

98.    The County's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against her pursuant to ORS 659A.103 et seq.

99.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## THIRD CLAIM FOR RELIEF

### (FMLA – 29 U.S.C. § 2601 et seq.)

100.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

101.    The County is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

102.    The County employed at least 50 employees for each working day during each of 20 or more calendar work weeks during 2019, the year before Plaintiff took leave and in 2020, the year Plaintiff took leave.

PAGE 21 – COMPLAINT AND DEMAND FOR JURY TRIAL

103.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

104.    At all times relevant, the County employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for it.

105.    The County employed Plaintiff for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

106.    The County employed Plaintiff for more than 12 months prior to Plaintiff taking leave\.

107.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

108.    Plaintiff took medical leave and family leave protected by FMLA.

109.    At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

110.    The County interfered, discriminated against, and retaliated against Plaintiff for engaging in the protected activity of taking medical and family leave under FMLA.

111.    The County interfered, discriminated against, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against her, including, but not limited to, taking away her job duties, transferring her, and trying to make her quit her job.

112.    As a direct and proximate result of the County's interference, discrimination, and retaliation, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to her economic damages in an amount to be determined at trial.

113.    The Court should enter an order declaring that the County violated the FMLA.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

114.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

115.    Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

116.    Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

117.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date of payment.

## FOURTH CLAIM FOR RELIEF

### (OFLA – ORS 659A.150 et. seq.)

118.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

119.    Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

120.    The County employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years before Plaintiff took leave.

121.    The County employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year Plaintiff took leave.

122.    Immediately prior to commencing family leave, Plaintiff worked for the County for more than 180 days.

123.    Plaintiff worked an average of more than 25 hours per week for the County during the 180 days immediately preceding the date on which she commenced leave.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

124.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

125.    The County interfered, discriminated, and retaliated against Plaintiff for taking family and medical leave by taking adverse employment actions against her, including, but not limited to, taking away her job duties, transferring her, and trying to make her quit her job.

126.    As a result of the County's interference, discrimination, and retaliation against her, Plaintiff suffered and continued to suffer economic losses.

127.    As a result of the County's discrimination and retaliation against her, Plaintiff is entitled to equitable relief and back pay.

128.    The Court should enter an order declaring that the County violated the OFLA.

129.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

130.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover her reasonable attorneys' fees and costs, including expert witness fees.

131.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.


## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

A.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

PAGE 24 – COMPLAINT AND DEMAND FOR JURY TRIAL

B.      A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

C.      Equitable relief, including, but not limited to, reinstatement if Plaintiff so chooses;

D.      Liquidated damages;

E.      Plaintiff's costs and disbursements incurred herein; Plaintiff's attorneys' fees; and

**DAMAGES FOR PLAINTIFF'S FIRST, SECOND,**

**AND FIFTH CLAIMS FOR RELIEF**

132.      Plaintiff is entitled to equitable relief, including, but not limited to, a declaration or order from the Court finding that the County violated her statutory rights, and an injunction prohibiting further discrimination and retaliation.

133.      Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, loss of retirement income, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury, but not less than $700,000.

134.      Plaintiff is entitled to non-economic damages sufficient to compensate her for emotional distress and other nonpecuniary losses in an amount to be proven at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury but not less than $800,000.

135.      To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

136.      Pursuant to 42 U.S.C. § 1988, 42 U.S.C. §2000e-5, ORS 659A.885, ORS 20.107, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

PAGE 25 – COMPLAINT AND DEMAND FOR JURY TRIAL

137.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date of payment.

**Plaintiff demands a trial by Jury.**

DATED: January 31, 2023

**Law Offices of Daniel Snyder**

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
            Attorneys for Plaintiff

PAGE 26 – COMPLAINT AND DEMAND FOR JURY TRIAL